**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:19-CV-581-RJC-DCK**

| | | |
|---|---|---|
| **JOSEPH B. LAMBERT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **FIRST HORIZON BANK, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendant First Horizon Bank's Motion To Dismiss" (Document No. 25). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be <u>granted</u> in part and <u>denied</u> in part.

## I. BACKGROUND

Joseph B. Lambert ("Lambert" or "Plaintiff") initiated this action with the filing of a "Complaint" (as a *pro se* Plaintiff) in Superior Court in Mecklenburg County on September 25, 2019. (Document No. 1-1). Defendants First Horizon Bank ("FH Bank"), successor by conversion to First Tennessee Bank National Association ("First Tennessee"), successor in interest by merger to First Horizon Home Loan Corporation ("FH-HLC"), First Horizon National Corporation ("FH National"), and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Defendants") filed a "Notice Of Removal" (Document No. 1) on October 30, 2019. Plaintiff filed a "First Amendment To Complaint" (Document No. 6) (also filed in his capacity as a *pro se* Plaintiff) on November 12, 2019 ("First Amended Complaint"). On November 26, 2019,

Defendants filed a "Motion To Dismiss And Motion To Strike (In The Alternative)" (Document No. 8). The Honorable Robert J. Conrad, Jr. issued an "Order" (Document No. 21) on July 6, 2020 adopting the undersigned's "Memorandum And Recommendation" (Document No. 18). The Order directed Plaintiff to file a second amended complaint within thirty days and denied Defendants' motion to dismiss. (Document No. 21, p. 3). Plaintiff then filed a "Second Amended Complaint" (Document No. 22) through counsel on July 27, 2020.

The facts underlying Plaintiff's Second Amended Complaint concern a mortgage loan agreement that Plaintiff originally entered into with FH-HLC in 2007. (Document No. 22, pp. 1-2). The loan agreement included execution of a promissory note, which was secured by a Deed of Trust for Plaintiff's property in Mint Hill, NC. Id. at p. 1. "Plaintiff subsequently entered into two modifications of the said loan, the second of which [executed in December 2014] is the subject of this litigation." Id. at p. 2. Plaintiff levels five main allegations against FH Bank: (1) "Defendant failed to deduct the [] principal loan balance reduction of $4,807.92 from [P]laintiff's outstanding principal balance on the January 1, 2015 payment due date as stipulated under the terms of the" second loan modification agreement; (2) "Defendant also consistently billed a principal due amount that was significantly less than the contractual amount," which Plaintiff considered a breach of the second loan modification agreement; (3) "Defendant materially misrepresented the interest due on his loan in every current billing cycle from 2015 to date because [D]efendants routinely collected higher interest in the next billing cycle than the amount [D]efendant originally represented as due;" (4) Defendant failed to adequately define what constituted late payment and also improperly assessed a late payment to Plaintiff; and (5) Defendant provided "hard-to-decipher and otherwise vague and ambiguous information" to Plaintiff's Qualified Written Requests in violation of the Real Estate Settlement Procedures Act. Id. at pp. 3-5, 7. In summary, Plaintiff's

2

allegations largely concern payments he made that he intended Defendant to apply to the principal amount of the loan such that that amount would be reduced. Plaintiff contends that Defendant did not apply his payments as the terms of the loan agreement specified it would.

Plaintiff's Second Amended Complaint asserts five claims against FH Bank[1] in connection with these actions: (1) breach of contract; (2) fraud; (3) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1; (4) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*; and (5) conversion and unlawful taking. Id. at pp. 12-19. Plaintiff also seeks declaratory and injunctive relief in addition to compensatory and punitive damages. Id. at p. 19.

Defendant FH Bank filed the pending "Motion To Dismiss" (Document No. 25) and "Memorandum In Support Of Motion To Dismiss Second Amended Complaint" (Document No. 25-2) on August 25, 2020. Plaintiff filed a response in opposition (Document No. 28) on October 7, 2020. FH Bank filed a "Reply In Further Support Of Defendants' Motion To Dismiss" (Document No. 29) on October 14, 2020.

The pending motion is now ripe for review and a recommendation to the presiding district judge.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A

---

[1] The undersigned notes that the Second Amended Complaint contains no claims against either First Horizon National Corporation or Mortgage Electronic Registration Systems, Inc. Therefore, and by Plaintiff's own acknowledgement, the undersigned respectfully recommends that these two Defendants be dismissed from the lawsuit as no claims remain against them. (Document No. 28, p. 2, n.2).

3

complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

#### A. Breach Of Contract Claim

Defendant contends that Plaintiff fails to state a claim for breach of contract pursuant to Fed.R.Civ.P. 12(b)(6) because his claim is barred by the applicable statute of limitations.

4

(Document No. 25-2, p. 5).  Defendant contends that a three-year statute of limitations applies to breach of contract claims in North Carolina, and as such, any breach of contract claim that Plaintiff might have is time-barred.  Id. at pp. 5-6.  Plaintiff's breach of contract claim accrued, Defendant argues, "at some point in 2015," and therefore, "Plaintiff appears to have been aware – or reasonably could have become aware – of the alleged issues related to Defendant's complained [of] accounting practices as early as February 2015 or as late as December 31, 2015."  Id. at p. 6.  Thus, Defendant contends that Plaintiff's filing of the original Complaint in this matter in September 2019 was too late – the latest date within which he could have brought the claim within the statute of limitations in Defendant's view was December 2018.  Id.

Plaintiff argues in response that his breach of contract claim is not barred by the statute of limitations, because each action that Defendant took "constitut[ed] a continuing practice or course of conduct…with each distinct breach triggering a new or different statute of limitations period."  (Document No. 28, p. 9).  Defendant takes issue with this characterization of its actions, contending that its alleged failure "to apply pre-payments to principal in contravention of specific contract terms" does not relate to the continuing wrong doctrine that Plaintiff relies upon to evade the statute of limitations defense.  (Document No. 29, p. 2).  Under that doctrine, according to Plaintiff, a new limitations period is triggered upon each action.  (Document No. 28, p. 11).  In Defendant's view, "the contractual dispute is not concerning Plaintiff's duties under the contract [which Defendant admits did require installment payments on a monthly basis];  rather, the dispute surrounds Defendant's contractual obligations to apply payments in a certain framework."  (Document No. 29, p. 3).

Plaintiff also contends that his breach of contract claim is still valid for a separate reason.  "[A]s alleged in the Second Amended Complaint, on at least two occasions, August 12, 2017 and

5

May 12, 2018, respectively, [D]efendant materially breached the Agreement when it failed to deduct Plaintiff's principal payment from his outstanding principal balance in accordance with the terms of the Agreement." (Document No. 28, p. 10). These instances, Plaintiff argues, are "distinct breaches of contract…and are clearly within the requisite statute of limitations time frame." Id. Defendant appears to concede that these instances from August 2017 and May 2018 could lead to a cognizable breach of contract claim. Defendant says that "[e]ven if this Court were to find that these two incidents are separate harms and not continuing injuries flowing from the original 2015 alleged breach, it is only these two allegations that may be salvaged." (Document No. 29, p. 4).

In North Carolina, "[c]laims based upon a breach of contract are subject to a three-year statute of limitations." Avoki v. Carolina Telco Fed. Credit Union, 2018 WL 3551524, at *2 (W.D.N.C. July 24, 2018) (citing N.C. Gen. Stat. § 1-52). Moreover, the Court may properly consider whether the applicable statute of limitations bars Plaintiff's claims at the motion to dismiss stage under Fed.R.Civ.P. 12(b)(6), "if it appears on the face of the Complaint that such statute bars the claim." Koehler v. Rite-Aid Pharm., 2012 WL 896144, at *2 (W.D.N.C. Mar. 15, 2012) (quoting Horton v. Carolina Medicorp, Inc., 472 S.E.2d 778, 780 (N.C. 1996)); accord United States v. Kivanc, 714 F.3d 782, 789 (4th Cir. 2013) ("[t]he statute of limitations is an affirmative defense that may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim").

North Carolina case law is sparse regarding whether the continuing violation doctrine applies to breach of contract claims so as to toll the applicable statute of limitations. Under the continuing violation doctrine, Plaintiff can sue on a claim that would usually be barred as untimely under the statute of limitations if he can show that the action "was a…fixed and continuing

6

practice" that was "occasioned by continual unlawful acts, not continual ill effects from an original violation." Nat'l Advert. Co. v. City of Raleigh, 947 F.2d 1158, 1166 (4th Cir. 1991) (internal quotations and citations omitted). While it appears that the Court of Appeals of North Carolina is open to application of the continuing violation doctrine to breach of contract claims, the undersigned could not find a single state court case directly addressing the issue and thus will decline to predict how a North Carolina court might address the issue. See Crabtree v. Smith, 797 S.E.2d 710 (N.C. Ct. App. 2017) (holding that the plaintiffs' breach of contract claim based upon alleged failure by Defendant to modify the terms of the mortgage agreement as reflected by the terms of the modification contract was barred by the three-year statute of limitations because "[e]ven assuming *arguendo* that [Defendant's] conduct constituted a continuing wrong…plaintiffs' complaint fails to allege any wrongdoing that fell within the three year statute of limitations period"). Nonetheless, Plaintiff's breach of contract claim need not be salvaged by or rely only upon the continuing violation doctrine to remain live under the statute of limitations.

Instead, the undersigned is persuaded by Plaintiff's analogy to the installment contract scenario, in which "the statute of limitations runs against each installment individually from the time it becomes due." United States Leasing Corp. v. Everett, Creech, Hancock, & Herzig, 363 S.E.2d 665, 669 (N.C. Ct. App. 1988). It is true, as Defendant points out, that in North Carolina "a cause of action for breach of contract accrues, and the statute of limitations period begins to run, [a]s soon as the injury becomes apparent to the claimant or should reasonably become apparent." ABL Plumbing & Heating Corp. v. Bladen Cty. Bd. of Educ., 623 S.E.2d 57, 59 (N.C. Ct. App. 2005) (internal quotations and citations omitted). Any damage occurring after the initial action causing the breach "is only an aggravation of the original injury and does not restart the statutory limitations period." Id.; see also Curry v. Trustmark Ins. Co., 600 F. App'x 877, 880

7

(4th Cir. 2015) ("federal district courts in Maryland have concluded that while *harm* in a given case may be continuous, often there exists only a single violation or breach from which all of Plaintiff's harm flowed" (emphasis added) (internal quotations and citations omitted)).

However, here, the facts do not mirror such a scenario in which the Defendant took only one original action that caused a waterfall-effect of damage that became apparent over time. Instead, as Plaintiff alleges in the Second Amended Complaint, on "August 12, 2017 and May 12, 2018, respectively, [D]efendant materially breached the Agreement when it failed to deduct [P]laintiff's principal payment from his outstanding principal balance in accordance with the terms of the Agreement." (Document No. 22, p. 13). Therefore, Plaintiff does not allege "a single, isolated breach," but rather two actions giving rise to new breaches "such that accrual of the statute of limitations began anew" with each alleged violation of the second loan modification agreement. Dave & Buster's, Inc. v. White Flint Mall, LLLP, 616 F. App'x 552, 558 (4th Cir. 2015). As in the Murphy v. CitiMortgage, Inc. case, with similar facts to the instant case, "the statute of limitations begins to run separately as to each breach that occurred – i.e., as to each improper accounting that Defendants applied under the contract." 2018 WL 10333829, at *4 (N.D. Ga. Jan. 31, 2018). In that case, the plaintiff argued "that Defendants failed to properly account for her loan payments on a particular property." Id. at *1. While the Court in that case cited the principle that the undersigned will apply here – that each successive improper accounting by Defendant gave rise to a new breach triggering a new limitations period – there, the claim still was "time-barred." Id. at *5. Even taking the latest breach as foundation for the plaintiff's breach of contract claim would not save the claim from failure because her claim was brought outside of the applicable statute of limitations period. Id.

Here, though, there is no statute of limitations problem as to the August 2017 and May 2018 alleged breaches – Plaintiff filed her claim in September 2019, thus clearly within the three-year statute of limitations applicable to breach of contract claims in North Carolina. N.C. Gen. Stat. § 1-52; see also Fed.R.Civ.P. 3 ("[a] civil action is commenced by filing a complaint with the court"). Defendant seems to concede as much. In attempting to support its own argument, Defendant confusingly seems to make Plaintiff's argument for him that he is within the statute of limitations: "any alleged misapplication of a prepayment Plaintiff *elected* to make is a separate and distinct breach of contract." (Document No. 29, p. 3). Thus, Defendant by his own admission indicates that there was not just a single action that it took that led to a cascade of injury – instead, Defendant acknowledges that it took various actions, each of which gave rise to a new breach of contract (and impliedly gave rise to a new statute of limitations period).

Therefore, Plaintiff's breach of contract claim survives Defendant's challenge under Rule 12(b)(6). At least as to Plaintiff's allegations regarding Defendant's actions on August 12, 2017 and May 12, 2018, the undersigned respectfully recommends that Defendant's motion to dismiss Plaintiff's breach of contract claim be denied.

### B. Fraud Claim

Defendant contends that Plaintiff's fraud claim should fail under Fed.R.Civ.P. 12(b)(6) for several reasons. First, it contends, Plaintiff "attempts to camouflage his breach of contract claim as a fraud claim by asserting the word 'fraudulently' in front of the alleged breached contractual obligations; however, this bare legal conclusion is not sufficient." (Document No. 25-2, p. 8). Moreover, Defendant contends that Plaintiff's fraud claim "is barred by the economic loss rule," since it argues that Plaintiff doesn't identify a duty that Defendant had "'separate and distinct' from its contractual obligations." Id. at p. 9.

9

More specifically, Defendant challenges Plaintiff's claim that Defendant "falsely represented to [P]laintiff that it would apply all payments over the principal amount due (Partial prepayment) to principal in order to reduce the outstanding principal balance on the loan in accordance with the terms of the Note and Deed of Trust." (Document No. 22, p. 14). Defendant contends that this allegation fails "to satisfy all of the elements necessary to assert a fraud claim." (Document No. 25-2, p. 9). Plaintiff fails on the intent element necessary to state a successful fraud claim, according to Defendant, because he "makes no specific factual allegations that any of the statements contained in these communications were false, or that Defendants knew they were false at the time they were made." Id. Defendant levels the same challenge against Plaintiff's contention in the Second Amended Complaint that Defendant had a "fraudulent scheme" based upon provision of "convoluted, hard-to-decipher and otherwise vague and ambiguous responses to [P]laintiff's QWRs." (Document No. 22, p. 14). As to this allegation in Plaintiff's Second Amended Complaint, Defendant not only contends that Plaintiff fails to meet the requisite elements for a successful fraud claim, but he also contends that Plaintiff fails to meet Rule 9's particularity requirement. (Document No. 25-2, p. 10).

Plaintiff, on the other hand, contends that he has "identifie[d] with sufficient particularity the who, what and the how[,] when[,] and where of Defendant's violative conduct." (Document No. 28, p. 13). Plaintiff contends that since "Defendant has engaged in the violative conduct across numerous transactions and over a long period of time, it is impractical to require Plaintiff to detail each instance of 'when' the conduct occurred." Id. He also suggests that "the heightened pleading standard for fraud claims is relaxed somewhat where, as here, factual information is peculiarly within [D]efendant's knowledge or control." Id. Defendant takes issue with Plaintiff's assertion that a relaxed pleading standard applies, arguing that Plaintiff is incorrect

about the standard and reiterating his contention that "each instance of fraud alleged by Plaintiff fails to make any specific factual allegations that any of the statements contained in communications from Defendant were false or that Defendant knew they were false at the time they were made."  (Document No. 29, p. 6).

In order to state a successful fraud claim under North Carolina law, Plaintiff must allege the following elements:

> (1) material misrepresentation of a past or existing fact;  (2) the representation must be definite and specific;  (3) made with knowledge of its falsity or in culpable ignorance of its truth;  (4) that the misrepresentation was made with intention that it should be acted upon;  (5) that the recipient of the misrepresentation reasonably relied upon it and acted upon it;  and (6) that there resulted in damage to the injured party.

Swift Beef Co. v. Alex Lee, Inc., 2018 WL 792071, at *4 (W.D.N.C. Feb. 8, 2018) (quoting Hudson-Cole Dev. Corp. v. Beemer, 511 S.E.2d 309, 312-13 (N.C. Ct. App. 1999)).  Furthermore, pursuant to Fed.R.Civ.P. 9(b), Plaintiff must also allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby" – in other words, "the who, what, when, where, and how of the alleged fraud." Swift Beef Co., 2018 WL 792071, at *4 (quoting United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (internal quotations and citations omitted)).

Additionally, a breach of contract claim cannot also moonlight as a fraud claim where the essence of the dispute is contractual.  "[M]erely failing to carry out a promise in contract 'does not support a tort action for fraud.'"  Swift Beef Co., 2018 WL 792071, at *4 (quoting Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp., 15 F.3d 327, 331 (4th Cir. 1994));  see also Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 166 (4th Cir. 2018) ("a plaintiff may not circumvent the economic loss rule simply by claiming that a breach of contract claim also sounds in fraud").  Rather, to state *both* a breach of contract claim and a fraud claim simultaneously,

Plaintiff must allege that Defendant "had the specific intent not to perform at the time the promise was made." Swift Beef Co., 2018 WL 792071, at *4. However, "mere generalities and conclusory allegations will not suffice to sustain a fraud claim." Id. (quoting Norman v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 594 (M.D.N.C. 2003) (internal quotations and citations omitted)).

The undersigned agrees with Defendant that Plaintiff's allegations of fraud amount to nothing more than a breach of contract claim embellished with words suggesting that Defendant acted "fraudulently." After examining the Second Amended Complaint, the Court cannot find any alleged facts indicating Defendant's specific intent not to carry out "the terms of the Note and Deed of Trust." (Document No. 22, p. 14). Rather, Plaintiff's bare assertions, as Defendant contends, are nothing more than "speculation" and "conclusory allegations" of fraud by way of "asserting the word 'fraudulently' in front of the alleged breached contractual obligations," which cannot form the basis of a valid fraud claim. (Document No. 25-2, p. 8); Moore v. Wachovia Bank & Tr. Co., 226 S.E.2d 833, 835 (N.C. Ct. App. 1976). Examples of Plaintiff at random inserting the word "fraudulently" or "falsely" in front of what are, at heart, contractual claims include: "[D]efendant [] fraudulently manipulated [P]laintiff's outstanding principal balance;" "Defendant fraudulently assessed late payment charges;" "[D]efendant repeatedly and falsely represented to [P]laintiff that it would apply all payments over the principal amount due…to principal in order to reduce the outstanding principal balance on the loan;" Defendant had a "fraudulent scheme;" and Defendant made "fraudulent promises of a character likely to influence, persuade, or induce [P]laintiff." (Document No. 22, pp. 13-14).

As to some of the allegations contained in the Second Amended Complaint, the undersigned finds it unclear which *specific* statements from Defendant form the basis for Plaintiff's fraud claim. Moreover, with respect to any statements that possibly *might* form the basis for

Plaintiff's fraud claim (although not alleged specifically in the fraud section), the undersigned sees no allegation that Defendant "was aware the alleged statement[s] [were] false when [they were] made." (Document No. 25-2, p. 7). Thus, to repeatedly assert Defendant's "fraudulent" behavior is meritless, without more specificity. Plaintiff states speculatively that "Defendant acted intentionally and with actual malice with the intent to induce [P]laintiff to act differently than he would have done had he known the true facts," but this bald statement has no support. (Document No. 22, p. 15).

In order to successfully plead a fraud claim, Plaintiff must allege "[t]he required scienter for fraud," which includes "both knowledge [of the falsity of the representation] and an intent to deceive." Sain v. Adams Auto Grp., Inc., 781 S.E.2d 655, 667 (N.C. Ct. App. 2016) (internal quotations and citations omitted). While ordinarily, "conclusory allegations of [D]efendant's knowledge as to the true facts and of [D]efendant's intent to deceive" suffice to plead a successful fraud claim under Rule 9's particularity requirements, when the underlying facts concern a breach of contract dispute, such conclusory allegations – as stated – are insufficient. Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). Since "North Carolina has recognized an independent tort arising out of breach of contract only in carefully circumscribed circumstances," when a fraud claim is alleged alongside a breach of contract claim, more particularity on the intent element is required with respect to the fraud claim. Plaintiff would need to allege "additional facts, which, taken as true, would tend to show that Defendant[] had the specific intent to break their promises at the time they were made." Carolina Power & Light Co. v. Aspect Software, Inc., 2009 WL 256332, at *2-*3 (E.D.N.C. Feb. 3, 2009) (quoting Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 345-46 (4th Cir. 1998)). Here, Plaintiff does not meet this burden by alleging flatly that Defendant intended to mislead Plaintiff.

Given that "[t]he crux of this matter is and always has been a contract dispute," the undersigned will respectfully recommend that Plaintiff's fraud claim be dismissed because the claim is an "attempt by the plaintiff to manufacture a tort dispute out of what is, at bottom, a simple breach of contract claim." Broussard, 155 F.3d at 346 (internal quotations and citations omitted).

### C. Conversion And Unlawful Taking Claim

Defendant advances two arguments for why Plaintiff's conversion and unlawful taking claim should fail pursuant to Fed.R.Civ.P. 12(b)(6). First, it contends that "Plaintiff puts forth absolutely no facts demonstrating that the principal payments were not rightfully in possession of the Defendants." (Document No. 25-2, p. 14). Instead, Defendant asserts, "consistent with the terms of the Second Modification [to the loan agreement], Defendants were entitled to payments on the Loan." Id. at pp. 14-15. Second, Defendant contends that Plaintiff's tort claim for conversion and unlawful taking "is barred by the economic loss rule," since "Plaintiff states that Defendants were contractually required to apply his pre-payments to principal and failed to do so." Id. at p. 15. The conversion allegation is nothing more than a breach of contract claim, Defendant contends, and "Plaintiff cannot therefore allege a tort per the strictures of the rule." Id.

Plaintiff's response defends his position that "Defendant retained the payments [the prepayments to principal] for its own benefit…such an act by the Defendant denies the Plaintiff dominion over, and rights to, his prepayments." (Document No. 28, p. 15). On Defendant's second argument regarding the economic loss rule barring the conversion claim, Plaintiff contends that the rule does "not bar tort claims based on independent legal duties." Id. at p. 16. Here, the independent legal duty that Plaintiff asserts Defendant has violated is "its obligation of good faith and fair dealing in the performance of its contractual obligations." Id. Defendant, on the other

hand, states that this "duty of good faith and fair dealing is…not an independent legal duty, but rather is part of Defendant's contractual duty." (Document No. 29, p. 7).

The undersigned agrees with the Defendant that Plaintiff has not stated a claim for conversion and unlawful taking. In order to state a conversion claim under North Carolina law, a Plaintiff must allege: "ownership in the plaintiff and wrongful possession or conversion by the defendant." Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 723 S.E.2d 744, 747 (N.C. 2012). Moreover, as Defendant argues, "[t]he tort of conversion is well defined as an *unauthorized* assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the…exclusion of an owner's rights." Vaseleniuck Engine Dev., LLC v. Sabertooth Motorcycles, LLC, 727 S.E.2d 308, 310 (N.C. Ct. App. 2012) (internal quotations and citations omitted).

First, according to Plaintiff's own allegations in the Second Amended Complaint, "[a]ccording to the Note and Deed of Trust, excess payments made by [P]laintiff are defined as prepayments, and [D]efendant is required to apply [P]laintiff's prepayments to principal to effectuate a corresponding reduction in [P]laintiff's outstanding principal balance." (Document No. 22, p. 4). The implication, therefore, of this statement is that the loan agreement contemplated that Plaintiff could make monthly payments in amounts greater than he owed, but upon doing so, he would voluntarily relinquish that payment to FH Bank. Thus, upon prepayment, Defendant was the rightful owner of those funds. There was thus no "unauthorized" assumption – in fact, there was explicit *authorization* per the terms of the Note and Deed of Trust, as laid out in the Second Amended Complaint, for Defendant to take possession of the prepayment.

Plaintiff's conversion and unlawful taking claim also fails, though, under the economic loss rule. Here, the essence of the dispute is contractual in nature, and all that Plaintiff is truly

claiming is "that Defendants were contractually required to apply his prepayments to principal and failed to do so." (Document No. 25-2, p. 15). However, a conversion claim – or any tort claim – "must be grounded on a violation of a *duty* imposed by operation of law, not a violation of a duty arising purely from the contractual relationship of the parties." Legacy Data Access, Inc., 889 F.3d at 164 (internal quotations and citations omitted). Despite Plaintiff's contentions to the contrary, the obligation of good faith and fair dealing is *not* one of these separate legal duties, for it is "implied in a contract" and "typically is part and parcel of a claim for breach of contract." Dove Air, Inc. v. Florida Aircraft Sales, LLC, 2011 WL 3475972, at *10 (W.D.N.C. Aug. 9, 2011).

The undersigned will therefore respectfully recommend that Defendant's motion to dismiss Plaintiff's conversion and unlawful taking claim be granted.

### D. Unfair and Deceptive Trade Practices Act Claim

As stated with respect to Plaintiff's fraud claim and conversion and unlawful taking claim, the Second Amended Complaint is rife with allegations that at heart center upon a contractual dispute between Plaintiff and Defendant over Defendant's handling of payments under the second modification to the loan agreement. The undersigned is therefore persuaded by Defendant's compelling argument that Plaintiff's unfair and deceptive trade practices claim should fail because Plaintiff's relevant UDTPA allegations "are all contractual complaints, and under North Carolina law, are not a valid basis for a NC UDTPA claim." (Document No. 25-2, p. 12).

"In order to establish a claim [under the UDTPA, N.C. Gen. Stat. § 75-1.1] a plaintiff must show, (1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." McManus v. GMRI, Inc., 2012 WL 2577420, at *5 (W.D.N.C. July 3, 2012). Importantly, North Carolina courts "routinely dismiss UDTPA claims asserted in simple breach of contracts cases."

M.J. Woods, Inc. v. Little Rapids Corp., 2016 WL 7494469, at *3 (W.D.N.C. Dec. 30, 2016) (quoting A-1 Pavement Marking, LLC v. APMI Corp., 2008 WL 2974103, at *5 (N.C. Super. Ct. Aug. 4, 2008)). The justification for dismissal of a UDTPA claim in what is at heart a breach of contract case is "because North Carolina law requires a showing of substantial aggravating circumstances to support a claim under the U[D]TPA." Broussard, 155 F.3d at 347 (internal quotations and citations omitted). The circumstances must be "egregious," such as "an intentional misrepresentation for the purpose of deceiving another and which has a natural tendency to injure the other." McManus, 2012 WL 2577420, at *5. Unfair acts or practices under the statute are "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Ace Chem. Corp. v. DTI Transps., Inc., 446 S.E.2d 100, 106 (N.C. Ct. App. 1994). But, if Plaintiff alleges aggravating factors that "are conclusory and fail to state sufficient factual content," the Court should dismiss the UDTPA claim. Id. at *6. And "[a] mere breach of contract, even if intentional, is not an unfair or deceptive act under [the UDTPA]." Id.

Plaintiff alleges that "Defendant's acts and practices…are oppressive, unscrupulous and substantially injurious to consumers and they tended to and did deceive Plaintiff." (Document No. 22, p. 16). Without more, this is a bald allegation of an aggravating circumstance. As Defendant states, "each of [Plaintiff's] allegations [with respect to his UDTPA claim] stems from a misunderstanding of Defendant's accounting practices, which are governed by the relevant contractual documents between the parties." (Document No. 25-2, p. 11). Plaintiff contends that "despite [his] repeated and specific instructions to [D]efendant to apply [P]laintiff's partial prepayment to his outstanding principal balance to effectuate an outstanding principal balance reduction on the loan…[D]efendant continued to apply [P]laintiff's principal partial prepayment to the next payment cycle instead of crediting it to his outstanding principal balance." (Document

No. 22, pp. 15-16). Plaintiff also contends that Defendant failed to define what it considered a "late payment" – however, a few lines later, Plaintiff then provides a very clear definition of what Defendant indicated it considered as late: "if payment is made after the due date, it is considered late." (Document No. 22, p. 16). The undersigned struggles to understand how Defendant could have been any more clear, much less how this statement is in any way misleading.

Indisputably, Plaintiff has not sufficiently alleged a UDTPA claim, for the essence of the dispute between the parties concerns the manner in which Defendant handled the accounting of Plaintiff's payments and the correspondent reduction in his loan balance. Such a dispute is a simple breach of contract claim that fails to give rise to a UDTPA claim. The undersigned therefore respectfully recommends that Plaintiff's UDTPA claim be dismissed.

### E. Real Estate Settlement Procedures Act Claim

Plaintiff contends in the Second Amended Complaint that "[D]efendant had an obligation [under RESPA] to conduct a reasonably thorough investigation before responding to the [P]laintiff's QWRs, and its inability to provide [P]laintiff with documentation detailing the exact calculations [D]efendant itself utilizes as requested, as well as its failure to provide any response to certain questions, demonstrates that [D]efendant failed to conduct a reasonably thorough investigation." (Document No. 22, p. 17). Plaintiff furthermore alleges that "Defendant failed and refused to make appropriate account corrections pursuant to [P]laintiff's QWRs." (Document No. 22, p. 17).

"RESPA prescribes certain actions to be followed by entities or persons responsible for servicing federally related mortgage loans, including responding to borrower inquiries." Ward v. Sec. Atlantic Mortg. Elec. Registration Sys., Inc., 858 F. Supp. 2d 561, 573 (E.D.N.C. 2012). Under the relevant provisions of RESPA, "after the receipt from any borrower of any qualified

written request [('QWR')]," the servicer should, within thirty days, take one of two courses of action. 12 U.S.C. § 2605(e)(2). The servicer shall either "make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower)." Id. at § 2605(e)(2)(A). Or, if the servicer believes that the account is mistake-free, the servicer shall "conduct[] an investigation" and "provide the borrower with a written explanation or clarification that includes" either (1) "to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer," or (2) the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." Id. at §§ 2605(e)(2)(B)-(C).

Moreover, in order to state a claim for violation of RESPA, a Plaintiff must "allege [] pecuniary loss attributable to the RESPA violation." Ward, 858 F. Supp. 2d at 575. On this requirement, Plaintiff has sufficiently plausibly alleged pecuniary loss stemming from the alleged RESPA violation: "[a]s a direct and proximate result of [D]efendant's violations of RESPA, [P]laintiff and the Class have been damaged by being subjected to unlawful principal payments, improper accrual of unpaid interest, fees, and other unwarranted charges and costs." (Document No. 22, p. 18).

Defendant contends that the plain language of the statute merely requires "a reasonable investigation," and provision to Plaintiff of "written responses." (Document No. 25-2, p. 13). In these written responses, Defendant contends that they provided, "as required by the statute," "an explanation for why [the requested] documentation was unavailable." Id. Defendant then asserts that the statute does *not* require the servicer "to respond with information that is satisfactory

19

according to the subjective requirements of the borrower." Id. Bluntly, Defendant argues that "Plaintiff's dissatisfaction with the [Defendant's] answer cannot, through alchemical thinking, create a RESPA violation out of Defendant's full compliance with the letter of the law." Id. at p. 14.

Plaintiff, on the other hand, asserts that "a purported response that provides convoluted, hard-to-decipher and otherwise vague and ambiguous information that is not directly responsive to the requests, fails to provide pertinent information or selectively responds to certain requests and not to others does not comply with the dictates of the statute." (Document No. 28, p. 14). Plaintiff asserts that the form of Defendant's answers "is tantamount to no response." Id.

According to the facts alleged in the Second Amended Complaint, Plaintiff sent FH Bank two QWRs, one on June 28, 2019 and the other on August 8, 2019. (Document No. 22, pp. 9-10). With respect to the first QWR, Plaintiff alleges that "the Bank provided convoluted, hard-to-decipher and otherwise vague and ambiguous information that did not answer [P]laintiff's direct questions." Id. at p. 10. As to this QWR, Defendant is correct – there is no RESPA violation. The statute only requires that Defendant conduct an investigation and respond accordingly to Plaintiff's request for information. There is no dispute that Defendant *did* respond to Plaintiff's first QWR. Thus, since "Plaintiff's RESPA claim amounts to a disagreement over the accuracy of [Defendant's] answers to the QWR and not a disagreement over whether [Defendant] responded to the QWR with the information required by § 2605(e)(2)," his claim should be dismissed. Knott v. Nationstar Mortg., LLC, 2016 WL 5329613, at *5 (W.D.N.C. Sept. 21, 2016). Defendant is correct – even if Plaintiff is not satisfied with the content of the response, if Defendant at minimum did respond either with the information requested or an explanation of why such information was not obtainable *as to each question in the QWR* (as indicated by the facts alleged in Plaintiff's

Second Amended Complaint), then Defendant has satisfied RESPA's requirements and any claim for violation of the statute will fail.

With regard to the second QWR that Plaintiff sent, the undersigned is of the view that whether Plaintiff has adequately stated a RESPA claim is a closer call. Plaintiff alleges that in its response to the second QWR, Defendant "only directly answered Question 1, and either failed to respond at all to other questions or provided generalized responses to specific questions, and also failed to provide requested documentation without explaining why the same was unavailable." (Document No. 22, p. 10). Taking the allegations in Plaintiff's Second Amended Complaint as true, without additional facts, the undersigned finds that Plaintiff has sufficiently stated a RESPA claim so as to survive a motion to dismiss on the Defendant's second QWR response. The statute contemplates that FH Bank would provide at least *some* response to each of Plaintiff's questions in the QWR – even if that response is simply that the Defendant cannot obtain the requested information or explains why the information is not available. See 12 U.S.C. § 2605(e)(2)(C).

Defendant's assertion that Plaintiff's claim on this second QWR is not actionable because the fact that Plaintiff "did not like the answer" is an insufficient basis for a RESPA claim is not representative of Plaintiff's recitation of the facts in the Second Amended Complaint. (Document No. 25-2, p. 13). Defendant seems to imply in its memorandum that it believes that a reasonable investigation plus any written response – no matter how general – complies with the statute. Not so. See Hueso v. Select Portfolio Servicing, Inc., 2021 WL 1102452, at *7 (S.D. Cal. Mar. 23, 2021) ("Plaintiff's allegation [that the servicer] provided only some documents with no explanation as to why other requested records were omitted is sufficient to state that [the servicer] did not comply with RESPA"). If, as Plaintiff alleges, Defendant simply failed to respond to

certain questions in Plaintiff's QWR, that failure constitutes an actionable RESPA claim because the response is deficient.

The undersigned thus respectfully recommends that Defendant's motion to dismiss Plaintiff's RESPA claim be granted as to Plaintiff's first QWR but denied as to Plaintiff's second QWR. As to the second QWR, Plaintiff has alleged facts sufficient to withstand a motion to dismiss, and discovery will assist in development of the facts surrounding Plaintiff's allegations that Defendant failed to respond to some portions of his second QWR.

### F. Claims For Declaratory And Injunctive Relief

Defendant argues that because Plaintiff's "claims for substantive relief should be dismissed[,]…there are no claims for substantive relief remaining upon which a claim for declaratory relief might be based." (Document No. 25-2, p. 16). Plaintiff evidently takes issue with such point, arguing that "there are indeed claims for substantive relief remaining upon which a claim for declaratory relief might be based." (Document No. 28, p. 18).

And as to Plaintiff's request for injunctive relief, Defendant contends that "Plaintiff has failed to show any of the four elements required for this court to use its discretion to issue a preliminary injunction." (Document No. 25-2, p. 17).

At the motion to dismiss stage, the Court will not opine on what type of relief might be appropriate in the present case were Plaintiff ultimately to prevail on any of his claims. See Lanier Constr. Co., Inc. v. City of Clinton, N.C., 812 F. Supp. 2d 696, 699 (E.D.N.C. 2011) ("[o]n a motion to dismiss, discussion of remedies is premature and only [Plaintiff's] [substantive] claims [] will be addressed here"). Thus, Defendant's arguments regarding whether Plaintiff has satisfied the requisite factors for issuance of an injunction are not appropriate grounds for analysis here on a motion to dismiss under Rule 12(b)(6). Notably, though, as set forth in the foregoing analysis,

the undersigned respectfully recommends dismissal of each of Plaintiff's claims, except for his breach of contract claim and his claim for violation of RESPA as to his second qualified written request. Thus, the undersigned respectfully recommends that the scope of any injunctive or declaratory relief that *might* ultimately be awarded would be limited to his remaining substantive claims for breach of contract and violation of RESPA with respect to Plaintiff's second QWR. See Plimpton v. Cooper, 141 F. Supp. 2d 573, 576 (W.D.N.C. 2001) ("a declaratory judgment action is a procedural device used to vindicate substantive rights and, as such, it is barred to the same extent that the claim for substantive relief on which it is based would be barred" (internal quotations and citations omitted)), *aff'd*, 21 F. App'x 159 (4th Cir. 2001); Laws v. Priority Tr. Servs. of N.C., 610 F. Supp. 2d 528, 532 (W.D.N.C. 2009) (holding that claims for injunctive and declaratory relief "are remedies rather than separate causes of action"); and Gulf Fleet Tiger Acquisition, LLC v. Thoma-Sea Ship Builders, LLC, 2010 WL 3720947, at *1 (E.D. La. Sept. 13, 2010) ("[a]n injunction, like damages, is but one potential *remedy* to which a party might be entitled if it can prevail on a substantive claim").

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant First Horizon Bank's Motion To Dismiss" (Document No. 25) be **GRANTED in part** and **DENIED in part**. The undersigned respectfully recommends that Defendant's motion to dismiss be granted as to Plaintiff's claims for fraud, conversion and unlawful taking, unfair and deceptive trade practices, and violation of the Real Estate Settlement Procedures Act as to Plaintiff's first qualified written request. The undersigned respectfully recommends that Defendant's motion to dismiss be denied as to Plaintiff's claims for breach of contract and

23

violation of the Real Estate Settlement Procedures Act as to Plaintiff's second qualified written request.

**IT IS FURTHER RECOMMENDED** that Defendants First Horizon National Corporation and Mortgage Electronic Registration Systems, Inc. be dismissed from this lawsuit as no claims are asserted against them in the Second Amended Complaint.

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);  United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: June 28, 2021

David C. Keesler
United States Magistrate Judge

24